# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Jamie Hill, Kathryn Neild, and Tricia Marvin, as representatives of a class of similarly situated persons, and on behalf of the Mercy Health Corporation Employees' Retirement Plan, the Rockford Health System Retirement Plan, and the Rockford Health Physicians Retirement Plan,<br><br>                Plaintiffs,<br>v.<br><br>Mercy Health Corporation, Mercy Health System Corporation, and Does 1-20,<br><br>                Defendants. | Case No. 20-cv-50286<br><br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................................1

BACKGROUND ...................................................................................................................................2

    I.    PROCEDURAL HISTORY ...................................................................................................2

        A.  The Pleadings and Motion to Dismiss ...............................................................2

        B.  Early Discovery, Mediation, and Settlement ......................................................2

        C.  Preliminary Approval of the Settlement ............................................................3

    II.    OVERVIEW OF SETTLEMENT TERMS ...............................................................................3

        A.  The Settlement Class...........................................................................................3

        B.  Monetary Relief ..................................................................................................4

        C.  Prospective Relief ...............................................................................................5

        D.  Release of Claims ...............................................................................................5

    III.    CLASS NOTICE AND REACTION TO THE SETTLEMENT ......................................................5

    IV.    REVIEW AND APPROVAL BY INDEPENDENT FIDUCIARY .................................................6

ARGUMENT .......................................................................................................................................7

    I.    LEGAL STANDARD .........................................................................................................7

    II.    THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE ...........................................8

        A.  The Class Representatives and Class Counsel Have Adequately Represented the Class.................................................................................................................8

        B.  The Settlement Is the Product of Arm's-Length Negotiations Between Experienced, Capable Class Counsel After Meaningful Discovery ......................9

        C.  The Settlement Provides Substantial Monetary and Non-Monetary Relief to the Class...............................................................................................................10

        D.  The Settlement Proceeds Will Be Distributed Equitably and Efficiently.............13

        E.  The Class, Independent Fiduciary, and Counsel Support the Settlement .............13

i

III.    THE CLASS NOTICE PLAN WAS REASONABLE AND EFFECTIVE ....................................14

IV.    THE COURT SHOULD REAFFIRM ITS CERTIFICATION OF THE SETTLEMENT CLASS ........15

CONCLUSION ...........................................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Abbott v. Lockheed Martin Corp.*,
    No. 3:06-cv-00701, Dkt. 526 (S.D. Ill. July 20, 2015) ....................................................12

*Allegretti v. Walgreen Co.*,
    No. 1:19-cv-05392, Dkt. 116 (N.D. Ill. Feb. 16, 2022) ........................................13, 14, 15

*Am. Int'l Group, Inc. v. ACE INA Holdings, Inc.*,
    2012 WL 651727 (N.D. Ill. Feb. 28, 2012) .....................................................................9

*Beach v. JPMorgan Chase Bank, Nat'l Ass'n,*
    No. 17-cv-00563, Dkt. 211 (S.D.N.Y. May 20, 2020) ....................................................11

*Beach v. JPMorgan Chase Bank, Nat'l Ass'n,*
    220 WL 6114545 (S.D.N.Y. Oct. 7, 2020) ....................................................................11

*Bhattacharya v. Capgemini N. Am., Inc.*,
    No. 1:16-cv-07950, Dkt. 114 (N.D. Ill. Nov. 13, 2018) ...............................................2, 13

*Dolins v. Cont'l Cas. Co.*,
    No. 1:16-cv-08898, Dkt. 133 (N.D. Ill. Sept. 20, 2018) .................................................10

*Eubank v. Pella Corp.*,
    2019 WL 1227832 (N.D. Ill. Mar. 15, 2019).....................................................................7

*Hale v. State Farm Mut. Auto. Ins. Co.*,
    2018 WL 6606079 (S.D. Ill. Dec. 16, 2018).....................................................................12

*In re Household Int'l, Inc. ERISA Litig.*,
    2004 WL 7329911 (N.D. Ill. Nov. 22, 2004) ...................................................................11

*In re Rite Aid Corp. Sec. Litig.*,
    146 F. Supp. 2d 706 (E.D. Pa. 2001) ...............................................................................11

*Isby v. Bayh,*
    75 F.3d 1191 (7th Cir. 1996) ...........................................................................8, 9, 10, 14

*Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*,
    2018 WL 2183253 (N.D. Cal. May 11, 2018) ..................................................................11

*Lively v. Dynegy, Inc.*,
    2008 WL 4657792 (S.D. Ill. Sept. 30, 2008).....................................................................13

*Loomis v. Exelon Corp.*,
    658 F.3d 667 (7th Cir. 2011) ..........................................................................12

*Nolte v. Cigna Corp.*,
    No. 2:07-cv-02046, Dkt. 412 (C.D. Ill. Oct. 15, 2013)...................................14

*Phillips Petroleum Co. v. Shutts,*
    472 U.S. 797 (1985).........................................................................................14

*Price v. Eaton Vance Corp.*,
    No. 18-12098, Dkt. 32 (D. Mass. May 6, 2019) ............................................11

*Price v. Eaton Vance Corp.*,
    No. 18-12098, Dkt. 57 (D. Mass. Sept. 24, 2019) ..........................................11

*Ramos v. Banner Health*,
    461 F. Supp. 3d 1067 (D. Colo. 2020)............................................................12

*Ramos v. Banner Health*,
    1 F.4th 769 (10th Cir. 2021) ...........................................................................12

*Redman v. RadioShack Corp.*,
    768 F.3d 622 (7th Cir. 2014) .............................................................................7

*Schulte v. Fifth Third Bank,*
    805 F. Supp. 2d 560 (N.D. Ill. 2011) ..............................................9, 10, 11, 12

*Seiden v. Nicholson*,
    72 F.R.D. 201 (N.D. Ill. 1976)........................................................................12

*Sims v. BB&T Corp.*,
    2019 WL 1995314 (M.D.N.C. May 6, 2019) .................................................11

*Snyder v. Ocwen Loan Servicing, LLC*,
    2019 WL 2103379 (N.D. Ill. May 14, 2019) ...................................................8

*Spano v. Boeing Co.*,
    No. 3:06-cv-00743, Dkt. 588 (N.D. Ill. Mar. 31, 2016) ............................12, 14

*T.K. Through Leshore v. Bytedance Tech. Co.*,
    2022 WL 888943 (N.D. Ill. Mar. 25, 2022)....................................................14

*Toomey v. Demoulas Super Mkts., Inc.*,
    No. 1:19-cv-11633, Dkt. 95 (D. Mass. March 24, 2021)................................11

*Toomey v. Demoulas Super Mkts., Inc.*,
 No. 1:19-cv-11633, Dkt. 100 (D. Mass. Apr. 7, 2021) ...................................................11

*Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*,
 2018 WL 8334858 (C.D. Cal. July 30, 2018) ...................................................................11

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
 396 F.3d 96 (2d Cir. 2005)..................................................................................................9

*Williams v. Rohm & Haas Pension Plan*,
 2010 WL 1490350 (S.D. Ind. Apr. 12, 2010) ...................................................................13

*Williams v. Rohm & Haas Pension Plan*,
 658 F.3d 629 (7th Cir. 2011) .............................................................................................13

*Wong v. Accretive Health, Inc.*,
 773 F.3d 859 (7th Cir. 2014) ...............................................................................................9

## Rules, Statutes, Regulations

Fed. R. Civ. P. 23 ........................................................................................................................8

Fed. R. Civ. P. 23(b)(1)(A) .......................................................................................................15

Fed. R. Civ. P. 23(b)(1)(B) .......................................................................................................15

Fed. R. Civ. P. 23(c)(2)(B) .......................................................................................................14

Fed. R. Civ. P. 23(e) ...................................................................................................................7

Fed. R. Civ. P. 23(e)(2) ..............................................................................................................8

Fed. R. Civ. P. 23(e)(2)(A) .........................................................................................................8

Fed. R. Civ. P. 23(e)(2)(B) .........................................................................................................9

Fed. R. Civ. P. 23(e)(2)(C) .......................................................................................................10

Fed. R. Civ. P. 23(e)(2)(C)(ii)...................................................................................................13

Fed. R. Civ. P. 23(e)(2)(D) .......................................................................................................13

28 U.S.C. § 1715 .........................................................................................................................6

68 Fed. Reg. 75632 ..................................................................................................................6, 7

v

75 Fed. Reg. 33830 ........................................................................................................6

**Other Authorities**

Restatement (Third) of Trusts, § 100 cmt. b(1) ...........................................................12

## <u>INTRODUCTION</u>

On December 10, 2021, this Court preliminarily approved the Parties' Class Action Settlement Agreement, which resolves Plaintiffs' class action claims against Defendants Mercy Health Corporation and Mercy Health System Corporation ("Defendants") under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), relating to the management of three Mercy-affiliated defined contribution plans.[1] *See Dkt. 72*. The Court found that the terms of the Settlement were "sufficiently fair, reasonable, and adequate to warrant sending notice of the Settlement to the Settlement Class" and approved the distribution of the Notices of Settlement as specified in the Settlement Agreement. *See id. at 2*. The events following this order confirm that the Settlement is fair and reasonable and warrants final approval.

<u>First</u>, an Independent Fiduciary reviewed the Settlement pursuant to Department of Labor ("DOL") regulations and independently determined that the Settlement terms are reasonable. *See Declaration of Brock J. Specht in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement ("Second Specht Decl.") Ex. 1 (Report of the Independent Fiduciary)*. Among other things, the Independent Fiduciary found that "the Settlement was achieved at arms' length and is reasonable given the uncertainties of a larger recovery for the Class at trial and the value of claims foregone." *Id. at *4*.

<u>Second</u>, notice of the Settlement was provided to 16,268 class members, and in response no objections were received. *See Second Specht Decl. ¶ 4; Declaration of Jeffrey Mitchell in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement ("Mitchell Decl.") ¶¶ 9, 16*. The fact that the class members voiced no concerns about the Settlement further

---

[1] The plans at issue in this case are the Mercy Health Corporation Employees' Retirement Plan ("Mercy Plan"), Rockford Health System Retirement Plan ("RHS Plan"), and Rockford Health Physicians Retirement Plan ("RHP Plan") (collectively, the "Plans").

1

demonstrates that the Settlement is fair and reasonable. *See Bhattacharya v. Capgemini N. Am., Inc.*, No. 1:16-cv-07950, Dkt. 114, at *4 (N.D. Ill. Nov. 13, 2018).

Accordingly, Plaintiffs respectfully request that the Court grant final approval of the Settlement. This motion is unopposed by the Defendants.

## BACKGROUND

### I. PROCEDURAL HISTORY[2]

#### A. The Pleadings and Motion to Dismiss

Plaintiffs Jamie Hill and Kathryn Neild filed this action on August 4, 2020. *Dkt. 2*. The Complaint was later amended on November 20, 2020 to add Plaintiff Tricia Marvin. *Dkt. 40*. In their Amended Complaint, Plaintiffs allege that Defendants failed to prudently monitor and control the Plans' brokerage expenses and failed to prudently monitor certain Plan investments. *Id.* On December 23, 2020, Defendants filed a motion to dismiss. *Dkt. 48*. Plaintiffs filed a memorandum in opposition to Defendants' motion on January 13, 2021 (*Dkt. 49*), to which Defendants replied on January 27, 2021 (*Dkt. 52*). At the Parties' request, the Court then stayed the litigation pending mediation and the negotiation of the present Settlement. *See Dkts. 59–62*.

#### B. Early Discovery, Mediation, and Settlement

While Defendants' motion to dismiss was pending, the Settling Parties agreed to engage in early discovery to facilitate settlement discussions, which included the production of over 6,800 pages of documents and by Defendants. *See Dkts. 38, 38-1*; *Declaration of Kai Richter in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("Richter Decl.") ¶ 12.*

---

[2] The procedural history of this case was previously discussed in connection with Plaintiffs' motion for preliminary approval (*Dkt. 66 at 2–3*) and motion for attorneys' fees and costs, administrative expenses, and class representative service awards (*Dkt. 73-1 at 1–3*). For ease of reference, Plaintiffs have recounted that history here.

Following production and review of these materials, the Parties engaged in a full-day mediation with a neutral mediator, David Geronemus, on August 31, 2021.[3] *Richter Decl. ¶ 13*. After extensive arm's length negotiations, the Parties reached a settlement in principle, and then prepared the comprehensive Settlement Agreement. *Id. ¶ 14*; *Dkts. 61–64*.

### C.    Preliminary Approval of the Settlement

On December 10, 2021, the Court issued an Order granting preliminarily approval of the Settlement. *Dkt. 72*.[4] In its Order, the Court preliminarily certified the Settlement Class for Settlement purposes, *see infra* at 3–4, found the terms of the Settlement to be "sufficiently fair, reasonable, and adequate" and in accordance with all applicable requirements of law, and approved the distribution of the Settlement Notices as specified in the Settlement Agreement. *See Dkt. 72 at 1–2*. In addition, the Court appointed Analytics Consulting, LLC ("Analytics") to serve as the Settlement Administrator, distribute the Notices, and carry out the other duties specified in the Settlement Agreement. *Id. at 2*.

## II.    OVERVIEW OF SETTLEMENT TERMS

### A.    The Settlement Class

In granting preliminary approval of the Settlement, the Court preliminarily certified the following Settlement Class:

> All participants and beneficiaries of the Mercy Health Corporation Employees' Retirement Plan at any time from August 3, 2014 through December 10, 2021, and all participants and beneficiaries of the Rockford Health System Retirement Plan and Rockford Health Physicians Retirement Plan at any time from January 1, 2017 through December 10, 2021, excluding members of the Mercy Health Corporation

---

[3] Mr. Geronemus is an experienced mediator who has successfully facilitated the resolution of numerous complex class actions, including ERISA class actions. *Richter Decl. ¶ 13 & Ex. B*.

[4] Prior to the Court's Preliminary Approval Order, the parties submitted an updated version of the Settlement Agreement on December 8, 2021 (*Dkt. 70-1*), which resolved issues identified by the Court in its November 24, 2021 Order (*Dkt. 69*). All references to the Settlement Agreement herein are to this updated version, which supersedes the prior version submitted on November 5, 2021 (*Dkt. 66-2*).

ERISA Benefit Plans Advisory Committee for the Plans at any time during the Class Period.

*Id. at 3*. There are 16,268 Settlement Class Members. *Mitchell Decl. ¶ 8.*[5]

### B.     Monetary Relief

Under the Settlement, Mercy Health Corporation will contribute $3.9 million to a common settlement fund. *Settlement Agreement ¶¶ 2.29, 5.4–5.5.* After accounting for any attorneys' fees and costs, administrative expenses, and service awards approved by the Court, the Net Settlement Amount will be distributed according to the Settlement's Plan of Allocation. *Id. ¶¶ 2.33, 5.9, 6.1.*

Under the Plan of Allocation, a Settlement Allocation Score will be calculated for each Class Member based on their quarterly account balances in the Plans, with each dollar invested in the Plans credited one (1) point, and then each dollar invested in the allegedly underperforming Voya Funds credited an additional one-half (0.5) point.[6] *Settlement Agreement ¶ 6.4.1–6.4.2.* Each Class Member will then receive a pro rata share of the Net Settlement Amount based on their Settlement Allocation Score in relation to other Class Members. *Id. ¶ 6.4.2.* Current Participants will have their Plan accounts automatically credited with their share of the Settlement, and Former Participants may elect to receive either a check or a rollover to an IRA or other tax-qualified plan. *Id. ¶¶ 6.5–6.6.* Former Participants who do not timely submit a Rollover Form will be sent a check. *See id. ¶¶ 6.6.3, 6.6.* Any uncashed checks will be paid into the Plans for the purpose of defraying administrative fees and expenses of the Plans. *Id. ¶¶ 6.11–6.12.*

---

[5] Based on information provided by the Plans' recordkeeper, the Parties previously estimated that there were over 20,000 Class Members. *Richter Decl. ¶ 3.* After identifying participants with accounts in more than one of the Plans, approximately 4,300 records were consolidated as duplicative. *Mitchell Decl. ¶ 8.*

[6] The additional half point allocation for monies invested in the Voya Funds is intended to address the alleged losses associated with those funds. *See Richter Decl. ¶ 6.*

4

### C.     Prospective Relief

The Settlement also provides that Defendants shall retain one or more independent consultants pursuant to ERISA § 3(21) for at least three years from the Settlement Effective Date. Such service provider(s) will provide new perspective (*i.e.*, the person(s) may not be an existing service provider or otherwise affiliated with the Plans) in reviewing the investment options in the Plans, the fees for those options, and any brokerage fees incurred by the Plans. *Id. ¶ 7.1.*

### D.     Release of Claims

In exchange for the foregoing relief, the Settlement Class will release Defendants and affiliated persons and entities (the "Released Parties" as defined in the Settlement) from all claims:

> (1) that were asserted in the Action or could have been asserted in the Action based on any of the allegations, acts, omissions, purported conflicts, representations, misrepresentations, facts, events, matters, transactions or occurrences that are were alleged or asserted in the Action or could have been alleged or asserted based on the same factual predicate, whether or not pleaded in the Complaint … ; (2) that would be barred by res judicata based on the Court's entry of the Final Approval Order; (3) that relate to the direction to calculate, the calculation of, and/or the method or manner of allocation of the Qualified Settlement Fund pursuant to the Plan of Allocation or to any action taken or not taken by the Settlement Administrator in the course of administering the Settlement; or (4) that relate to the approval by the Independent Fiduciary of the Settlement Agreement, unless brought against the Independent Fiduciary alone.

*Id. ¶ 2.39.* The Released Claims do not include claims to enforce the Settlement. *Id. ¶ 9.2.*

### III.    CLASS NOTICE AND REACTION TO THE SETTLEMENT

Pursuant to the Court's Order preliminarily approving the Settlement, Analytics mailed Notices of Settlement to each of the 16,268 Settlement Class members identified by the Plans' recordkeeper. *See Mitchell Decl. ¶ 9.*

Prior to sending these Notices, Analytics cross-referenced the addresses on the class list with the United States Postal Service National Change of Address Database. *Id. ¶ 8.* In the event that any Notices were returned, Analytics re-mailed the Notice to any forwarding address that was

provided, and performed a skip trace in an attempt to ascertain a valid address for the Class Member in the absence of a forwarding address. *Id. ¶¶ 11–12*. As a result, the notice program was very effective. Out of 16,268 Notices that were mailed, only 217 (1.33%) were ultimately undeliverable despite these efforts. *Id. ¶ 13*.

If any Class Members desired further information, Analytics established a Settlement Website at www.mercyhealtherisa.com. *Id. ¶ 14.*[7] Analytics also created and maintained a toll-free telephone support line (1-844-575-1894) as a resource for Class Members seeking additional information. *Id. ¶ 15*. This telephone number was referenced in the Notices, and also appears on the Settlement Website. *Id.*

The deadline to submit objections to the Settlement was April 4, 2022. *See Dkt. 72 at 5*. No objections were received. *See Second Specht Decl. ¶ 4*; *Mitchell Decl. ¶ 16*.

On November 15, 2021, Analytics also sent the notices required by the Class Action Fairness Act, 28 U.S.C. § 1715, to the appropriate federal and state officials. *Mitchell Decl. ¶ 6*. No objections were received in response to the CAFA notices, either. *Id. ¶ 16*.

IV.    REVIEW AND APPROVAL BY INDEPENDENT FIDUCIARY

Pursuant to Paragraph 3.1 of the Settlement Agreement and applicable ERISA regulations,[8] the Settlement was submitted to an Independent Fiduciary (Gallagher Fiduciary Advisors, LLC) for review following the Court's Preliminary Approval Order. *See Second Specht Decl. Ex. 1*.

---

[7] Among other things, the Settlement Website includes: (1) a "Frequently Asked Questions" page containing a clear summary of essential case information; (2) a "Home" page and "Important Dates" page, each containing clear notice of applicable deadlines; (3) case and settlement documents for download (including, among other things, the Settlement Agreement, Settlement Notices, Former Participant Rollover Form, Amended Complaint, the Court's Preliminary Approval Order, and Plaintiffs' Motion for Approval of Attorneys' Fees and Costs, Administrative Expenses, and Class Representative Service Awards and related documents); (4) contact information for Class Counsel and the Defendants' Counsel; and (5) email, phone, and U.S. mail contact information for Analytics. *Mitchell Decl. ¶ 14*.

[8] *See* Prohibited Transaction Exemption 2003-39, 68 Fed. Reg. 75632, as amended, 75 Fed. Reg. 33830.

After reviewing the Settlement and numerous case documents, and interviewing counsel for each of the Parties and the neutral mediator, the Independent Fiduciary affirmed, among other things, that: (1) "[t]he settlement terms, including the scope of the release of claims; the amount of cash received by the plan; the proposed attorney's fee award of one third of the settlement; and any other sums to be paid from the recoveries, are reasonable in light of the plan's likelihood of full recovery, the value of claims foregone and the risks and costs of litigation," *id.* at *3; (2) "the Settlement was achieved at arms' length and is reasonable given the uncertainties of a larger recovery for the Class at trial and the value of claims foregone," *id.* at *4; and (3) "[a]lthough the transaction will have the incidental effect of releasing the fiduciaries, the Settlement is not designed to benefit those fiduciaries but rather to resolve claims that have not been fully adjudicated and to enable the Plans to recover a portion of their losses," *id.* at *5. Accordingly, the Independent Fiduciary confirmed that "on behalf of the Plans . . . it approves and authorizes the settlement of Released Claims, as defined in the Settlement Agreement" and determined that "the Settlement Agreement meets the requirements of ERISA Prohibited Transaction Class Exemption 2003-39, as amended." *See id.* at *1.

## ARGUMENT

### I.  LEGAL STANDARD

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of any settlement agreement that will bind absent class members. "[T]he law quite rightly requires more than a judicial rubber stamp when the lawsuit that the parties have agreed to settle is a class action." *Redman v. RadioShack Corp.*, 768 F.3d 622, 629 (7th Cir. 2014). A court may approve a settlement only if it determines after a hearing that the proposed settlement is fair, reasonable, and adequate. *Eubank v. Pella Corp.*, 2019 WL 1227832, at *2 (N.D. Ill. Mar. 15, 2019).

Federal Rule of Civil Procedure 23, as amended (effective December 2018), identifies four factors considered in making such determination: (1) adequacy of representation, (2) existence of arm's-length negotiations, (3) adequacy of relief, and (4) equitableness of treatment of class members. Fed. R. Civ. P. 23(e)(2). These factors overlap significantly with the more detailed list of factors that courts in this Circuit have typically used for purposes of reviewing a proposed class action settlement (the "*Isby* factors"): "the strength of plaintiffs' case compared to the amount of defendants' settlement offer, an assessment of the likely complexity, length and expense of the litigation, an evaluation of the amount of opposition to settlement among affected parties, the opinion of competent counsel, and the stage of the proceedings and the amount of discovery completed at the time of settlement." *Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996). Because these principles "subsume most of the factors listed in Rule 23(e)(2)," *Snyder v. Ocwen Loan Servicing, LLC*, 2019 WL 2103379, at *5 (N.D. Ill. May 14, 2019), they are considered together. As discussed below, both the factors in Rule 23(e)(2) and the *Isby* factors overwhelmingly favor approval of the Settlement.

## II. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

### A. The Class Representatives and Class Counsel Have Adequately Represented the Class

First, the Class Representatives and Class Counsel have adequately represented the interests of the Class. *See* Fed. R. Civ. P. 23(e)(2)(A). Each of the named Plaintiffs agreed to perform their duties as class representatives, and each has fulfilled those duties throughout the course of the litigation. *See Dkts. 67-07, 67-09, 67-11*. Class Counsel are also adequate, with extensive experience in ERISA litigation, *see Richter Decl. ¶¶ 19–20*, and have skillfully represented the Class by obtaining substantial relief in the incipiency of litigation. This factor supports final approval.

8

**B.      The Settlement Is the Product of Arm's-Length Negotiations Between Experienced, Capable Counsel after Meaningful Discovery**

Next, courts consider whether the proposal was negotiated at arm's length and review the circumstances surrounding the negotiations, including the stage of the proceedings and the amount of discovery completed at the time of settlement. *See* Fed. R. Civ. P. 23(e)(2)(B); *Isby*, 75 F.3d at 1199. "A 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" *Am. Int'l Group, Inc. v. ACE INA Holdings, Inc.*, 2012 WL 651727, at \*10 (N.D. Ill. Feb. 28, 2012) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)). That is exactly the situation presented here.

Although the case settled in its incipiency, the record reflects that "enough discovery has taken place to ensure 'effective representation' of the settlement class." *See id.*, 2012 WL 651727, at \*9 (quoting *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 587 (N.D. Ill. 2011)). Relevant here: (1) Class Counsel undertook an extensive investigation of the factual and legal bases for Plaintiffs' claims prior to commencing the action; (2) the parties' legal positions were staked out in connection with the motion to dismiss; (3) Defendants produced over 6,800 pages of documents prior to mediation; and (4) Class Counsel had the necessary experience and qualifications to evaluate the Parties' legal positions and the early discovery that was produced. *Richter Decl. ¶¶ 10–12, 19–21*. This gave the parties a clear view of the facts and law, and the strengths and weaknesses of their case. Under these circumstances, it was appropriate for the parties to explore an early settlement.[9]

---

[9] Courts within this Circuit have approved settlements at similar stages of proceedings. *See, e.g.*, *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 864 (7th Cir. 2014) (noting that, "although formal discovery had not

Moreover, Class Counsel and Defendants' counsel (Morgan Lewis & Bockius, LLP) are knowledgeable and experienced in complex class actions such as this, and were assisted in their negotiations by Mr. Geronemus, an experienced, independent mediator.[10] After separately interviewing Class Counsel, Defendants' counsel, and Mr. Geronemus, the Independent Fiduciary concluded, "the Settlement was achieved at arms' length and . . . is at least as favorable as an arms-length transaction agreed to by unrelated parties would likely have been." *Second Specht Decl. Ex. 1 at \*4.* These factors also support final approval.

### C. The Settlement Provides Substantial Monetary and Non-Monetary Relief to the Class

The third Rule 23 factor considers whether "the relief provided to the class is adequate" in light of "the costs, risks, and delay" of further litigation. *See* Fed. R. Civ. P. 23(e)(2)(C);[11] *see also Isby*, 75 F.3d at 1199 (evaluating the strength of plaintiffs' case compared to the amount of defendants' settlement offer, and the likely complexity, length, and expense of the litigation). For the reasons that follow, these factors favor final approval.

First, the $3.9 million Gross Settlement Amount represents a significant portion of the alleged damages. Specifically, the $3.9 million recovery represents over half of the allegedly

---

commenced, [plaintiffs] had access to extensive public documents," and settlement was reached "after an arm's-length negotiation where the parties' positions on liability and damages were extensively briefed and debated" before an experienced mediator); *Dolins v. Cont'l Cas. Co.*, No. 1:16-cv-08898, Dkt. 133, at \*5 (N.D. Ill. Sept. 20, 2018) ("The negotiations were supported by a robust investigation before commencement of the Lawsuit; the production and review of confidential documents … and extensive legal and factual research on the issues in the case."); *Schulte*, 805 F. Supp. 2d at 587.

[10] *See Richter Decl. ¶¶ 18–21; First Specht Decl. at ¶¶ 3–10; see also Richter Decl. ¶ 13.*

[11] Other relevant considerations include: (1) the terms of any award of attorneys' fees, (2) any related agreement, and (3) the effectiveness of any proposed distribution method. Fed. R. Civ. P. 23(e)(2)(C). The first of these considerations has been addressed in connection with Plaintiffs' motion for approval of attorneys' fees and costs. *See Dkt. 73-1 at 6–13*; *see also Second Specht Decl. Ex. 1 at \*4* ("The fee request is also reasonable in light of the effort expended by Plaintiffs' counsel in the Litigation."). Second, there are no other agreements relating to the Settlement. *See Settlement Agreement ¶ 13.13*; *Second Specht Decl. Ex. 1 at \*5.* The third consideration is discussed below. *See infra* at 13.

inflated broker fees and nearly a quarter of the total estimated losses.[12] This is on par with numerous other ERISA class action settlements that have been approved across the country.[13] *See In re Household Int'l, Inc. ERISA Litig.*, 2004 WL 7329911, at *4 (N.D. Ill. Nov. 22, 2004) (finding the monetary relief was "fair, reasonable, and adequate" where "[t]he Settlement amount is within the range of settlement values obtained in similar cases and is within the range of reasonable settlements that would have been appropriate in this case"); *Schulte*, 805 F. Supp. 2d at 583–84 (approving 10% recovery and collecting cases approving between 5.35% and 25.5% of a class's maximum potential recovery).

Second, the Settlement also provides for meaningful prospective relief. As noted above, Defendants have agreed to retain a third-party investment consultant to monitor and review of the Plans' investment lineup, related fees, and brokerage expenses for at least three years. *Settlement Agreement ¶ 7.1.* These safeguards directly address the issues that Plaintiffs raised in the lawsuit, and supports approval of the Settlement. *See Schulte*, 805 F. Supp. 2d at 583 (noting that prospective relief provided an "important and valuable benefit" to the class that further supported final settlement approval).

---

[12] For purposes of mediation, Plaintiffs estimated that the total broker fees exceeded a reasonable amount by $7.1 million, and the total investment losses were approximately $8.9 million, for a total alleged loss of $16 million. *Richter Decl. ¶ 4 & n.1.* At present value, the alleged losses were $19.3 million. *See id.*

[13] *See, e.g.*, *Toomey v. Demoulas Super Mkts., Inc.*, No. 1:19-cv-11633, Dkt. 95 at 10 (Mar. 24, 2021), *approved* Dkt. 100 (D. Mass. Apr. 7, 2021) (approving settlement that represented approximately 15–20% of alleged losses); *Beach v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 17-cv-00563, Dkt. 211 (May 20, 2020), *approved*, 2020 WL 6114545, at *1 (S.D.N.Y. Oct. 7, 2020) (16% of alleged losses); *Price v. Eaton Vance Corp.*, No. 18-12098, Dkt. 32 at 12 (May 6, 2019), *approved*, Dkt. 57 (D. Mass. Sept. 24, 2019) (23% alleged losses); *Sims v. BB&T Corp.*, 2019 WL 1995314, at *5 (M.D.N.C. May 6, 2019) (19% of estimated losses); *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, 2018 WL 8334858 (C.D. Cal. July 30, 2018) (25% of estimated losses); *Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*, 2018 WL 2183253, at *6–7 (N.D. Cal. May 11, 2018) (approximately 10% of losses under Plaintiffs' highest model); *see also In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001) (since 1995, class action settlements have typically "recovered between 5.5% and 6.2% of the class members' estimated losses").

Third, in the absence of a settlement, Plaintiffs would have faced significant litigation risks. At the time the parties reached a settlement, Defendants' Motion to Dismiss was pending. In the event the motion was denied, there was a risk that the Court might have dismissed the claims on summary judgment. Assuming the case proceeded to trial, the Defendants still might have prevailed.[14] Finally, even if Plaintiffs prevailed at trial on liability, issues would have remained regarding proof of loss and calculation of damages.[15]

There is little doubt that continuing the litigation would have resulted in complex and costly proceedings, which would have significantly delayed relief to Class, and might have resulted in no relief at all.[16] ERISA cases such as this can extend up to a decade before final resolution, sometimes going through multiple appeals.[17] The duration of these cases is, in part, a function of their complexity, which further weighs in favor of the Settlement. *See, e.g.*, *Schulte*, 805 F. Supp. 2d at 586. Accordingly, it is no surprise that the Independent Fiduciary concluded, "[the Settlement] is reasonable given the uncertainties of a larger recovery for the Class at trial and the value of claims foregone." *Second Specht Decl. Ex. 1 at *4.*

### D. The Settlement Proceeds Will Be Distributed Equitably and Efficiently

The Settlement also outlines an equitable and effective method of distribution. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii), (D). As noted above, the Settlement proceeds will be distributed to Class

---

[14] *See, e.g.*, *Loomis v. Exelon Corp.*, 658 F.3d 667 (7th Cir. 2011).

[15] *See* Restatement (Third) of Trusts, § 100 cmt. b(1) (determination of investment losses in breach of fiduciary duty cases is "difficult"); *see, e.g.*, *Ramos v. Banner Health*, 461 F. Supp. 3d 1067, 1134–35 (D. Colo. 2020), *aff'd*, 1 F.4th 769 (10th Cir. 2021) (rejecting the plaintiffs' proffered damages calculation).

[16] *See Schulte*, 805 F. Supp. 2d at 582–83; *Seiden v. Nicholson*, 72 F.R.D. 201, 208 (N.D. Ill. 1976) ("If this case had been litigated to conclusion, all that is certain is that plaintiffs would have spent a large amount of money, time, and effort."); *Hale v. State Farm Mut. Auto. Ins. Co.*, 2018 WL 6606079, at *4 (S.D. Ill. Dec. 16, 2018) ("[A]bsent this proposed resolution, and considering the strong likelihood of post-trial motions and appeals, the parties were unlikely to achieve a final disposition any time soon.").

[17] *See, e.g.*, *Spano v. Boeing Co.*, 3:06-cv-00743, Dkt. 588 (N.D. Ill. Mar. 31, 2016) (9 years after filing); *Abbott v. Lockheed Martin Corp.*, 3:06-cv-00701, Dkt. 526 (S.D. Ill. July 20, 2015) (8.5 years after filing).

Members on a *pro rata* basis based on a common allocation formula. *See supra* at 4; *Settlement Agreement ¶¶ 6.4.1–6.4.2.* This allocation formula is carefully designed to account for each category of losses alleged in this case. *See Richter Decl. ¶ 6.* Current Participants will have their Plan accounts automatically credited with their share of the Settlement, and Former Participants may elect to receive either a check or a rollover to an IRA or other tax-qualified plan. *See supra* at 4. This method of distribution is both effective and efficient, avoids negative tax consequences for Class Members, and is consistent with numerous other ERISA class action settlements that have received court approval.[18]

### E.    The Class, Independent Fiduciary, and Counsel Support the Settlement

In light of the aforementioned factors, it is not surprising that there have been no objections to either the Settlement terms or the requested attorneys' fees, expenses, or service awards from any of the 16,268 Class Members who were sent a Settlement Notice. *See supra* at 8–13. The absence of any objections to the Settlement by Class Members supports the conclusion that the proposed settlement is fair, reasonable, and adequate. *See Bhattacharya*, No. 1:16-cv-07950, Dkt. 114, at *4; *Lively v. Dynegy, Inc.*, 2008 WL 4657792, at *2 (S.D. Ill. Sept. 30, 2008); *see also Williams v. Rohm & Haas Pension Plan*, 2010 WL 1490350, at *3 (S.D. Ind. Apr. 12, 2010), *aff'd*, 658 F.3d 629 (7th Cir. 2011).

Independent Fiduciary's approval and authorization of the settlement of Released Claims on behalf of the Plans further supports the Settlement. *Second Specht Decl. Ex. 1 at *1.* In authorizing the Settlement, the Independent Fiduciary affirmed that "[t]he settlement terms,

---

[18] *See, e.g.*, *Allegretti v. Walgreen Co.*, 1:19-cv-05392, Dkt. 116 at *5 (N.D. Ill. Feb. 16, 2022) (holding, in relevant part, that "the Settlement Agreement provides fair, reasonable and adequate relief to the class given . . . the effectiveness of the proposed method for distributing relief, which ensures that qualified Class Members with greater than *de minimis* damages receive a portion of the settlement, in rough proportion to their alleged losses, without having to file a claim").

including the scope of the release of claims; the amount of cash received by the [Plans]; the proposed attorney's fee award of one third of the settlement; and any other sums to be paid from the recoveries, are reasonable in light of the plan's likelihood of full recovery, the value of claims foregone and the risks and costs of litigation." *Id. at *3.*

Finally, it is Class Counsel's opinion that the proposed Settlement is fair and reasonable. *Richter Decl. at ¶ 9.* This *Isby* factor supports final approval of the Settlement. 75 F.3d at 1199.

## III.    THE CLASS NOTICE PLAN WAS REASONABLE AND EFFECTIVE

The class notice program also was reasonable and satisfied the requirements of Rule 23 and due process. The "best notice" practicable under the circumstances includes "individual notice to all [class] members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). That is precisely the type of notice that was provided here. *See Allegretti*, 1:19-cv-05392, Dkt. 116 at *3–4 (approving a similar notice program); *Spano*, No. 3:06-cv-00743, Dkt. 588 at *3 (same); *Nolte v. Cigna Corp.*, No. 2:07-cv-02046, Dkt. 412 at *3 (C.D. Ill. Oct. 15, 2013) (same).

As noted above, the Settlement Administrator sent the Court-approved Settlement Notices to Class Members via first-class U.S. Mail. *See supra* at 5–6. This type of notice is presumptively reasonable. *See Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 812 (1985). Further, the record reflects that approximately 98.67% of Notices of Settlement were successfully delivered. *See Mitchell Decl. ¶ 13*. This confirms the effectiveness of the notice program in this case. *See T.K. Through Leshore v. Bytedance Tech. Co.*, 2022 WL 888943, at *7 (N.D. Ill. Mar. 25, 2022). In addition, the Notices were accessible to all class members online via the Settlement Website.

Finally, the content of the Notices also was reasonable. These Notices were previously approved by the Court, *see Dkt. 72 at 4*, and are more than sufficient to meet the Rule 23 standard.

*See, e.g.*, *Allegretti*, 1:19-cv-05392, Dkt. 116 at \*4. No Class Member has claimed that the Notices were deficient, and to the extent they had any questions, they could review the Settlement Website, call the toll-free telephone line, or contact the Settlement Administrator or Class Counsel.

## IV.   THE COURT SHOULD REAFFIRM ITS CERTIFICATION OF THE SETTLEMENT CLASS

In its Preliminary Approval Order, the Court preliminarily certified the Settlement Class. *Dkt. 72 at 3; see supra* at 3–4. In support of preliminary approval, Plaintiffs previously established that: (1) the class is numerous; (2) common issues pertain to all class members; (3) Plaintiffs' claims are typical of other class members' claims; (4) Plaintiffs are adequate class representatives; (5) Class Counsel are experienced and competent; (6) class certification is appropriate under Rule 23(b)(1)(A) due to the risk of inconsistent adjudications; and (7) class certification is also appropriate under Rule 23(b)(1)(B) because any individual adjudication would be dispositive of other class members' interests. *Dkt. 66 at 12–15*. Nothing has changed since the Court preliminarily certified the Settlement Class. Accordingly, the Court should reaffirm its certification of the Class.

<u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court grant final approval of the settlement and enter the accompanying proposed Final Approval Order.

Dated: April 18, 2022            **NICHOLS KASTER, PLLP**

s/Brock J. Specht
Paul J. Lukas, MN Bar No. 22084X*
     *admitted in N.D. Ill.*
Brock J. Specht, MN Bar No. 0388343**
Patricia C. Dana, MN Bar No. 0400803**
     ** *admitted pro hac vice*
4700 IDS Center
80 S 8th Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Facsimile: (612) 338-4878
lukas@nka.com
bspecht@nka.com
pdana@nka.com

**THE PRINZ LAW FIRM, P.C.**
Kristen Prinz, IL Bar No. 6291900
1 East Upper Wacker Drive
Suite 2500
Chicago, IL 60601
Telephone: (312) 212-4450
Facsimile: (312) 284-4822
kprinz@prinz-lawfirm.com

**WALCHESKE & LUZI, LLC**
James A. Walcheske, WI Bar No. 1065635*
     *admitted in N.D. Ill.*
Paul M. Secunda, WI Bar No. 1074127**
     ** *admitted pro hac vice*
15850 W. Bluemound Rd., Suite 304
Brookfield, WI 53005
Telephone: (262) 780-1953
Facsimile: (262) 565-6469
jwalcheske@walcheskeluzi.com
psecunda@walcheskeluzi.com

ATTORNEYS FOR PLAINTIFFS

16

**CERTIFICATE OF SERVICE**

I hereby certify that on April 18, 2022, I caused a copy of the foregoing to be electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

Dated: April 18, 2022                          s/Brock J. Specht
                                               Brock J. Specht